**Constantinos XAROS, et al.,
Plaintiffs-Appellants,**

v.

**U.S. FIDELITY AND GUARANTY COMPANY and Darin & Armstrong, Inc., a foreign corporation, Defendants-Appellees.**

**No. 86–5172.**

United States Court of Appeals,
Eleventh Circuit.

July 7, 1987.

Allan M. Elster, North Miami Beach, Fla., for plaintiffs-appellants.

Richard W. Groner and William Reinhart Pomeroy, Abel, Band, Brown, Russell & Collier, Sarasota, Fla., for defendants-appellees.

Before TJOFLAT and VANCE, Circuit Judges, and ATKINS*, Senior District Judge.

ATKINS, Senior District Judge:

This case presents the question of whether subcontractors and their sureties who are not signatories to a collective bargaining agreement are employers under the Employment Retirement Income Security Act of 1974 (ERISA), Section 502, 29 U.S.C. § 1132(a)(3) (1974). The district court held that nonsignatory subcontractors and their sureties are not, and dismissed the case for lack of subject matter jurisdiction. We AFFIRM.

The facts in this case are uncomplicated. Landmark is a Florida corporation engaged in the construction business. It is a signatory to collective bargaining agreements with the Southeast Florida Laborers District Council. According to the terms of the agreements, Landmark is obligated to make fringe benefit contributions to the Laborers Trust Funds.

An audit of Landmark's payroll books and records by the trustees of the Laborers Trust Funds showed that Landmark owed contributions in the amount of $11,367.70 for the period from June 30, 1982 to March 7, 1983. Suit was instituted against Landmark to collect the delinquent contributions. *Southeast Florida Laborers District Council v. Landmark*, Case No. 83–1737–Civ–Hastings. Landmark subsequently filed for bankruptcy and all proceedings against Landmark were stayed pursuant to 11 U.S.C. § 362.

The trust funds then commenced an action against the appellees under ERISA to collect the delinquent contributions owed by Landmark. Appellee Darin & Armstrong (D & A) is engaged in the construction business. It contracted with Landmark to perform construction work on two Miami projects. D & A obtained a payment or performance bond on these two projects from United States Fidelity & Guaranty Company (USF & G). Neither the D & A nor USF & G were signatories to the collective bargaining agreement pursuant to which the trustees sued.

The appellees moved to dismiss the action for lack of subject matter jurisdiction under ERISA on the grounds that nonsignators are not employers as defined by section 1002(5) of ERISA and that therefore the court does not have independent subject matter jurisdiction over them. After the motion was filed, the bankruptcy court dismissed Landmark's petition, and the trustees moved to consolidate their action with Case No. 83–1737–Civ–Hastings. The district court denied the motion to consolidate and granted the motion to dismiss with prejudice. The trustees urge error on both rulings. Because we find that the district court was correct in granting the motion to dismiss for lack of subject matter jurisdiction, we do not reach the consolidation issue.

### A. *ERISA*

Section 1145 of ERISA imposes an obligation upon employers to contribute to employee benefit plans:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement, shall to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such contributions in accordance with the terms and conditions of such plan or such agreement.

The term "employer" is defined in section 1002(5) as:

> .... any person acting directly as an employer or indirectly in the interests of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.

Section 1132 creates a federal claim to enforce the obligation of employers imposed by section 1145.

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

Courts presented with the issue have generally refused to expand the definition of employer under ERISA to include entities which were not a party to the collective bargaining agreement under which suit is brought. In *Carpenters Southern Cal. Admin. Corp. v. D & L Camp Constr. Co.,* 738 F.2d 999 (9th Cir.1984), the court held that nonsignator sureties do not fall within the statutory meaning of employer. In that case, the administrator of a benefit plan brought an action to recover unpaid contributions from an employer and its surety under ERISA and state licensing laws. The district court dismissed the cause for lack of subject matter jurisdiction. The court held that diversity of citizenship did not exist between the plaintiff and the surety, and that the cause of action against the surety was founded upon state law, rather than federal law. ERISA was not applicable in the court's view.

> Neither the legislative history of ERISA, *see* 1974 U.S.Code Cong. & Ad.News 4639, nor of its 1980 amendments, *see* 1980 U.S.Code Cong. & Ad.News 2918, indicate that Congress meant to expand the concept of employer or the jurisdiction of the federal courts to include sureties, whose obligations are fixed by contract and regulated by state law for the protection of the public.
>
> The surety that provides a bond pursuant to the California contractor licensing statute is not acting for the benefit of the employer; it is acting for the benefit of those who have been damaged by the employer's failure to pay. Cal.Bus. & Prof.Code § 7071.5; *General Insurance Co. of America v. Superior Court of San Bernardino County,* 26 Cal.App.3d 176, 183, 102 Cal.Rptr. 541, 546 (1972). The protection is aimed at a broad class of entities that deal with contractors, not, as plaintiff would have us believe, primarily as protection of employee benefit plans. Any obligation of the surety to this plaintiff is founded in state, not federal law.

738 F.2d at 1000–1001.

Similarly, the court in *Carpenters Southern Cal. Admin. Corp. v. Majestic Housing,* 743 F.2d 1341 (9th Cir.1984) re-

jected the notion that Majestic Housing, a nonsignatory contractor, could be held liable under ERISA as an employer. In that case, Majestic Housing contracted with Guyer, a carpentry subcontractor, for work on a building project. Guyer was a party to a collective bargaining agreement with United Brotherhood of Carpenters & Joiners of America that obligated him to contribute to Union fringe benefit funds. He failed to make certain payments to the funds during the course of the Majestic Housing building project. The funds attempted to collect the delinquent contributions by filing a mechanic's lien on Majestic Housing's construction project rather than taking action against Guyer. Relying on *Camp Construction,* the court rejected the argument that Majestic Housing was a proper defendant in an action to enforce employer obligations under sections 1132 and 1145.

> We find the case before us is analogous to *Camp Construction.* Majestic is in a position similar to a surety in that it is a non-party to the bargaining agreement that is made responsible by the operation of state law for the failed obligation of the employer. And, as in *Camp Construction,* we find no evidence in the legislative history of ERISA or its 1980 amendments that a non-signatory property owner whose holdings are subject to a state mechanic's lien was intended as a proper defendant in an action to enforce the employer's obligations.

743 F.2d at 1346.

In *Laborers Local 938 Joint Health & Welfare Trust Fund, et al. v. B.R. Starnes Co.,* 658 F.Supp. 305 (S.D.Fla.1986), the district court rejected the notion that nonsignatory subcontractors and their sureties are liable as employers under ERISA. In that case, none of the defendants was a party to the collective bargaining agreement. The plaintiffs sued nonsignatory subcontractors and their sureties after the contractor, who was a party to the collective bargaining agreement, failed to make required contributions to a fringe benefit fund, and filed for Chapter 11 relief. The defendants moved to dismiss the complaint

for lack of subject matter jurisdiction and for failure to state a federal claim. The court granted the motion and dismissed the complaint. It held that "to impose liability upon these defendants under ERISA would grossly extend the scope of that law, where no such legislative intent is evident, nor apparent from the language of the statute itself." Order of Dismissal at 14.

■ We agree. We hold that nonsignator subcontractors and sureties are not employers as defined in section 1002(5) of ERISA and as incorporated into section 1145 of the Act, thereby precluding federal subject matter jurisdiction over claims against these nonsignatories for a signatory's failure to make contributions to employee benefit plans. To hold otherwise would constitute an unwarranted departure from the language of, and intent underlying, sections 1002(5) and 1145.

■ Appellants argue that the decisions in *Camp Construction* and *Majestic Housing* are directly in conflict with the Fifth Circuit's decision in *Gergora v. R.L. Lapp Forming, Inc.,* 619 F.2d 387 (5th Cir.1980), and that of the Southern District of Florida in *Broward County Carpenters Health and Welfare Trust Fund v. Seygo Constr. Co.,* 570 F.Supp. 817 (S.D.Fla.1983). In those cases, however, the signatories were parties to the suits. The court exercised pendent party jurisdiction over nonsignatory sureties where there existed federal question jurisdiction under section 1132 over the signatory contractor in *Seygo Construction,* and over a signatory contractor and subcontractor in *Gergora. Camp Construction, Majestic Housing,* and the instant case are all distinguishable on this ground, and we find no conflict. In *Camp* and the instant case, the signatories were not parties to the suit, and thus pendent party jurisdiction was not a considera-

tion.[1] In *Majestic Housing,* the court properly exercised its discretion in denying pendent party jurisdiction in light of *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). *See also Giardiello v. Balboa Ins. Co.,* 661 F.Supp. 644 (S.D. Fla.1985) [under *Gergora* and *Seygo Construction,* court has pendent jurisdiction over claims against surety of subcontractor who is a party to the collective bargaining agreement]. The courts in these cases did not rule on the issue of whether non-signatories are employers under ERISA.

■ Appellants argue in addition that the surety is an employer within the meaning of section 1002(5). In support of this argument, appellants urge that the Court's "narrow" interpretation of section 1002(5) in *Camp Construction* is, erroneous, and that an expansive reading of section 1002(5) is necessary to effectuate the clear intention on the part of Congress to provide maximum protection to employee benefit plans by securing delinquent employer contributions. According to the appellants, the phrase, "Any person acting indirectly as an employer, or indirectly in the interests of an employer, in relation to an employee benefit plan,[2]" must be read to include persons other than signatory employers who act indirectly in the interests of the employer and the plan. We disagree. The phrase, "in the interests of the employer" is the operative one here. The surety does not act indirectly in the interests of the employer, but rather acts directly in the interests of employees damaged by the employer's failure to pay. *Camp Construction,* 738 F.2d at 1001.

**B.** *Section 301*

■ Appellants submit as an alternate basis for jurisdiction section 301 of the

---

1. Appellant's argument that the court would be able to exercise pendent jurisdiction over the nonsignatories in this case if the case is consolidated with 83–1737–Civ–Hastings is specious. Consolidation does not result in a merger of suits or parties such that federal jurisdiction in one case can be engrafted upon a case with which it is consolidated. Each suit must have an independent jurisdictional basis. *See Johnson v. Manhattan Ry. Co.,* 289 U.S. 479, 53 S.Ct. 721, 77 L.Ed. 1331 (1933).

2. We quote here directly from section 1002(5). Appellants' Reply Brief misquotes the definition as, "Any person acting directly as an employer or indirectly in the interest of an employee benefit plan." Reply Brief at 3. The statute makes clear that an employer is one who acts as an employer, or indirectly in the interests of one, *not* indirectly in the interest of a plan.

Labor Management Relations Act, (LMRA), 29 U.S.C. § 185 (1947). Section 301 empowers federal courts to examine and adjudicate violations "of contracts between an employer and a labor organization representing employees in industry affecting commerce." Appellants rely on the following language in *Rehmar v. Smith*, 555 F.2d 1362, 1366 (9th Cir.1976):

> Section 301 jurisdiction is not dependent upon the parties to the suit but rather the nature or subject matter of the action. Jurisdiction exists as long as the suit is for violation of a contract between a union and employer even if neither party is a union or an employer.

On this basis, appellants argue that the fact that Landmark, the employer in this case, is not a party to the suit is irrelevant, as the nature of this case is one arising from a collective bargaining agreement and therefore properly invokes section 301 jurisdiction. This argument overlooks an equally important feature of section 301 jurisdiction: a Section 301 suit may be brought for violation of a labor contract only *against* those who are parties to the contract in issue. *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 501 (5th Cir.1982); *see also Majestic Housing*, 743 F.2d at 1344 [Actions merely relating to a contract within the coverage of section 301 do not come with its jurisdictional scope; citing *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 2854 n. 28, 77 L.Ed.2d 420 (1983)]. D & A and USF & G are not parties to the agreement in this case and have no rights under it. Rather, their rights are statutory in origin. A cause of action against them does not arise under the agreement but is merely related to it, and therefore the court does not have jurisdiction of these claims under section 301.

## C. *Diversity*

Appellants argue a final alternative basis for jurisdiction in the diversity statute. They assert jurisdiction under 28 U.S.C. § 1332 on grounds that the amount they seek exceeds $10,000 and that the appellants are citizens of one state, and that appellees are citizens of foreign states.

This simplistic argument overlooks the complexities of establishing the citizenship of the members of unincorporated associations in diversity actions.

■ The trust funds appear to be voluntary unincorporated associations. As such, they are not citizens of any particular state; rather, the citizenship of its members is determinative of the existence of diversity of citizenship. *See Int'l. Ass'n. of Machinists v. Eastern Airlines, Inc.*, 320 F.2d 451 (5th Cir.1963); *United Steel Workers of America, AFL–CIO v. Bouligny*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). In *Eastern Airlines*, the district court dismissed a complaint in which a labor union merely invoked, without supporting factual allegations, diversity jurisdiction pursuant to section 1332. The Fifth Circuit affirmed the dismissal on the following grounds:

> The requisite diversity of citizenship is not sufficiently alleged. The allegation that jurisdiction is *invoked* on the basis of diversity of citizenship is insufficient for the purpose. Plaintiff, presumably being a voluntary unincorporated association, is not a citizen in any particular state in its own right and the actual citizenship of its members is determinative. It presumably has a membership in Florida, but whether it does or not it was incumbent upon defendant to allege facts showing jurisdiction of the court and *this would require allegations negativing its being such voluntary unincorporated association or facts as to the residence or citizenship of its members.*

320 F.2d at 455 (emphasis added).

■ So too here. Appellants have not alleged facts establishing the citizenship of any of the parties, nor have they alleged facts negativing their existence as voluntary unincorporated associations. Rather, they have merely invoked diversity jurisdiction pursuant to section 1332 in the section of their Third Amended Complaint entitled, "Jurisdiction."

The Supreme Court has declined to depart from the common law rule that unincorporated associations are not juridical personalities to which diversity jurisdiction should be extended. In *Bouligny*, the

*Court held that this issue is more appropriately addressed to the Congress.*

> [P]leas for extension of the diversity jurisdiction to hitherto uncovered broad categories of litigants ought to be made to the Congress and not to the courts.
>
> \* \* \* \* \* \*
>
> Even if the record here were adequate, we might well hesitate to assume that petitioner's situation is sufficiently representative or typical to form the predicate of a general principle. We should, for example, be obliged to fashion a test for ascertaining of which state the labor union is a citizen.

382 U.S. at 150–152, 86 S.Ct. at 275–276.

■ We therefore decline to consider appellants' arguments that diversity may be properly alleged by naming the trustees as representatives of the employee benefit plans, as in class actions under rule 23(a), or by naming the trustees as the appropriate representative, as in ERISA actions. Although the trustees may be the appropriate representatives for these purposes, they are not as yet for purposes of determining diversity jurisdiction.

For the foregoing reasons, we AFFIRM the district court's dismissal for lack of subject matter jurisdiction.